## HENRY M. JONES, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent.

Docket Nos. 7325 and 12662.      Decided September 30, 1926.

*Raymond S. Oakes, Esq.*, and *Chester M. Foss, C. P. A.*, for the petitioner.

*A. George Bouchard, Esq.*, for the respondent.

This is a proceeding for the redetermination of deficiencies in income taxes for the years 1921, 1922 and 1923, in the respective amounts of $583.25, $5,281.15 and $244.97. The appeals for all years have been consolidated by stipulation of counsel for the respective parties. Subsequent to the filing of the petition in this case, petitioner admitted the correctness of the deficiency asserted for the year 1921. Petitioner alleges error on the part of the respondent concerning the deficiency for the year 1922, in that a loss on a railroad siding replaced in that year and a loss on stock held in the New England Cold Storage Co. were disallowed. Error is alleged concerning the year 1923, in that the respondent disallowed a loss claimed on notes of the New England Cold Storage Co. held by the petitioner.

### FINDINGS OF FACT.

Petitioner is an individual residing at Portland, Me., and has been engaged for a number of years in the structural steel business. Prior to March 1, 1913, he purchased Deake's Wharf, situated at Portland. Petitioner maintained a railroad siding on the wharf, in a large part for the delivery of steel on to the wharf. During the year 1921, he was advised by the railroads serving him that he must strengthen the equipment of the siding by laying heavier steel rails, new switches, etc. In the year 1922, at a cost of $4,262.50, the railroad siding was replaced by one conforming to the requirements of the railroads which was 41 feet longer and had a wider radius curve than the one removed.

The petitioner made a cash purchase for $6,600 in the year 1914 of 66 shares of the stock of the New England Cold Storage Co. The plant of the New England Cold Storage Co. was located at Portland, and that company, from the date of its organization, had never been a successful business enterprise. The petitioner bought the stock in 1914 largely by reason of civic pride. The financial condition of the company became precarious during the summer of 1922. In April, 1922, in an effort to secure additional capital for the company, a proposal was made to raise the sum of $150,000 by the issuance of serial notes. A Boston broker attempted to sell the serial notes, but

after working on the same reported in August, 1922, that no market could be found for the notes and the matter of their issuance was dropped. First mortgage bonds in the amount of $350,000 were issued by the company during the year 1920 and were outstanding in 1922. The Casco Mercantile Trust Co. was trustee under the deed of trust. The manager of the New England Cold Storage Co. became seriously ill in October, 1922, and was unable to carry on his duties. The officers and directors of the New England Cold Storage Co., by reason of the serious illness of the manager, instituted an immediate investigation of the financial condition of the company, and the Casco Mercantile Trust Co. caused its treasurer also to conduct an independent investigation. The treasurer of the Casco Mercantile Trust Co. found that the assets of the company were greatly inflated, bills of account owing in large amounts were not reflected on the books, assets which the company carried on its books were worthless, the business was being conducted at a loss and there was default on the interest due on the outstanding mortgage bonds. The New England Cold Storage Co. was unable to pay its current bills during the fall of 1922, and its creditors were threatening to close the business. The Casco Mercantile Trust Co., in order to protect its bond issue, was forced to guarantee the payment of the current bills of the company during the year 1922. The treasurer of the Casco Mercantile Trust Co. reported that, as a result of his investigations, the entire assets of the company were not worth in excess of the bonds outstanding. In October or November, 1922, it was agreed between the stockholders and directors of the New England Cold Storage Co. and the Casco Mercantile Trust Co., that the bank would protect its customers who were bondholders and that its treasurer should take active charge of the business. The Casco Mercantile Trust Co. did assume active control of the New England Cold Storage Co. in January, 1923, and, as a result of its operation of the business, it found that the same could not be conducted as a paying proposition. The Casco Mercantile Trust Co. in 1924 petitioned the court for the appointment of a receiver, which request was granted. The petitioner was in active touch with the officers and affairs of the New England Cold Storage Co. during 1922 and, based upon his own information, together with the condition of the company which the Casco Mercantile Trust Co. made known to him, he determined that his stock was worthless in the year 1922 and deducted the same as a loss in his income-tax return filed for that year. The physical assets of the New England Cold Storage Co., as they appeared on the books of account for the year 1922, reflected a value of $821,671.43, less $194,149.22 depreciation, or a supposed sound value of $627,522.21. In the year 1922, one-third of the

physical assets of the company was sold for $100,000. Of the $100,-000 received, $92,000 was used to retire the bond issue, leaving a bonded indebtedness of the company at the close of the year 1922 of $228,000. As against a possible surplus of $1,500 on the books of account at the close of the year 1922, there were liabilities of the company at the close of the year of over $215,000. The total assets of the company at the close of the year 1922 were insufficient to meet its outstanding bonds upon which interest payments had been defaulted. A receiver was appointed subsequent to 1922, and, after advertising that all of the assets would be sold at public sale, the Casco Mercantile Trust Co. bought in the business for the face value of the bonds outstanding.

Petitioner charged off in 1923, $1,600 of notes owing to him by the New England Cold Storage Co. The notes were in the amounts of $600 and $1,000. The $600 note was dated September 9, 1923, being a renewal of a note dated March 9, 1922, and matured six months from the date of the renewal. The $1,000 note was dated August 3, 1921, payable six months from date. There was no renewal of the $1,000 note on its maturity and no payments had been made on the same, either as to principal or interest.

OPINION.

MILLIKEN: Petitioner contends that the amount expended for laying new railroad tracks in the year 1922 is a deductible expense for and in that year, or, if that contention be denied, that he is entitled to deduct, as a loss sustained in the year 1922, the March 1, 1913, value of the old track depreciated down to the year 1922. The laying of the new tracks clearly represents a capital expenditure. We have no doubt as to the right of the petitioner to deduct as a loss the value of the tracks which he was forced to remove in the year 1922, but we are without competent evidence as to the March 1, 1913, value thereof. No testimony was introduced by one qualified to value the siding on March 1, 1913, and for lack of evidence we must therefore affirm the action of the respondent.

The evidence establishes the fact that the petitioner was justified in determining and writing off his stock in the New England Cold Storage Co. as a loss sustained in the year 1922. The condition of the company, together with the investigations which petitioner made, as well as the investigation made by the Casco Mercantile Trust Co., the result of which was imparted to him, warrants the allowance of the loss claimed. The determination of the respondent was in error.

The petitioner also claims, as a loss for the year 1923, notes of the New England Cold Storage Co. in the amount of $1,600, which he

held. The financial condition of the debtor company in 1923, together with all the attendant circumstances, convinces us that the notes were worthless and that the petitioner was justified in charging off the same in the year 1923.

> *Order of redetermination will be entered on 10 days' notice, under Rule 50.*